# James B. Smith

*v.*

## State of Illinois.

*Opinion filed March 17, 1915.*

1. Statutory Construction—*general rule with reference to adopted statutes.* Where an Act adopts another Act by reference, it means the law as then existing, and does not include subsequent amendments, unless there is an express or strongly implied intent to adopt such amendments.

2. Same—*exception to general rule.* Where, however, the adopting statute makes no reference to any particular Act by its title or otherwise, but refers to the general law regulating the subject, the reference will be regarded as including, not only the law in force at the date of the adopting Act, but also the law in force when action is taken or proceedings are resorted to.

3. Same—*all words in Act given effect.* It is a rule of statutory construction, that all the words in an Act must be given effect, if possible.

4. Words and Phrases—*meaning of phrase "now in force."* The words "now in force," which are used in section 14, *supra*, are defined by clause 18, par. 1, chap. 131 [statutes], Hurd's Rev. Stat., 1913, p. 2379, to mean: "The term, 'laws now in force,' and words of similar import, shall mean the laws in force at the time the Act containing the words, shall take effect."

W. O. Potter, and Gillespie & Fitzgerald, for Claimant:

The most important rule of statutory construction is, that the law will be so construed as to carry out the intention of the legislature.

*People* v. *Harrison,* 191 Ill., 257.

The courts will take into consideration the purpose for which the law was passed, the conditions then prevailing, and will give effect to its true intent, even if necessary to disregard its strict letter.

*People* v. *Harrison,* 191 Ill., 257; *People* v. *Kipley,* 171 Ill., 44; *People* v. *Chicago,* 152 Ill., 546; *Anderson* v. *Railroad,* 117 Ill., 26.

Absurd consequences in the application of a statute will not be imputed as a legislative intent. Courts are bound to presume that such was not the intention of the legislature, and must adopt a construction which will promote the ends of justice and avoid absurdity.

14— C C

*People* v. *Harrison,* 191 Ill., 257; *Wabash, etc. Railroad Co.* v. *Binkert,* 106 Ill., 298; *People* v. *Marshall,* 1 Gilm., 672; *Bryan* v. *Buckmaster,* Breese, 408.

Uniform construction by officers will be given great weight by courts.

*Nye* v. *Foreman,* 215 Ill., 285; *Cook County* v. *Healy,* 222 Ill., 310; *People* v. *Crossley,* 261 Ill., 78.

Where the adopting statute makes no reference to a particular Act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including not only the law in force at the date of the adopting Act, but also the law in force when the action is taken or the proceedings resorted to.

*People* v. *Crossley,* 261 Ill., 78; *Culver* v. *People,* 161 Ill., 89; *Lawrence* v. *People,* 188 Ill., 407; *Snell* v. *City of Chicago,* 133 Ill., 413.

P. J. Lucey, Attorney General, and Arthur R. Roy, Assistant Attorney General, for State:

The word "now" has a settled and well-defined meaning. It signifies at the present time, at a time contemporaneous with something done.

29 Cyc., 1140; *Pike* v. *Kennedy,* 15 Ore., 420, 15 Pac., 637; *Chapman* v. *Holmes' Excrs.,* 10 N. J. L., 20, 26; *King* v. *Miller,* 53 Ore., 53, 97 Pac., 524; *Tillamook City* v. *Tillamook County,* 56 Ore., 112, 115; *Nutt* v. *U. S.,* 26 Ct. Cl., 15, 17; *In re McNabb,* 175 Fed. Rep., 511.

The expressions "now in force" and "now existing" are applicable to the present time, and do not include subsequent acts.

*State* v. *Smith,* 72 Ind., 549, 550; *Beard* v. *Smith,* 22 Ky. (6 Mon.), 430, 453; *Barrows* v. *Peoples' Gas Light & Coke Co. et al.,* 75 Fed. Rep., 794; *Tillamook City* v. *Tillamook County,* 56 Ore., 112, 115; Hurd's Stats., 1913, chap. 131, par. 1, 18th clause, p. 2379.

Legislative intention manifested by subsequent amendment of Act.

*Lawrence* v. *People,* 188 Ill., 407, bot. 413, top 414; *U. S.* v. *Freeman,* 3 How., 556.

Claimant was warden of the Southern Illinois Penitentiary at Chester from July 1, 1903, to May 1, 1913.

This penitentiary was created by an Act approved May 24, 1877, in section 14 of which Act, it was provided, that "in order that uniformity may prevail in

the penitentiary system of this State, all laws and regulations now in force, for the government and management of the penitentiary at Joliet, shall hereby, so far as practicable, apply to the government and management of said 'Southern Illinois Penitentiary,' " Revised Statutes 1912, chapter 108, paragraph 69.

The salary of the warden of the penitentiary at Joliet was $2,500.00 per annum until the year 1897, when it was increased to $4,000.00, and on July 1, 1911, it became $5,000.00.

No Act increasing the salary from $2,500.00 per annum specifically applied to the salary of the warden of the Southern Illinois Penitentiary, until the General Assembly in 1913 amended section 14 of the Act hereinabove quoted, so that the same now reads, "in order that uniformity may prevail in the penitentiary system of this State, all laws and regulations now in force or that may hereafter be enacted for the government and management of the penitentiary at Joliet, including the salaries and compensation of the officers and employees thereof, shall be and is hereby declared and construed so far as practicable, to apply to the government and management of said Southern Illinois Penitentiary."

Claimant received salary from July 1, 1911, until his resignation on May 1, 1913, at the rate of $4,000.00 per year, and prior to that time had received salary at the rate of $3,600.00 per year. Appropriations for the Southern Illinois Penitentiary were paid quarterly to the institution by the Auditor, and checks were made out signed by the warden. Mr. Smith made demand of the Commissioners of the Southern Illinois Penitentiary, that he be paid at the rate of $5,000.00 a year, and they referred the matter to the Attorney General, who gave as his opinion, that Mr. Smith was not entitled to such compensation, because of the fact, that the law made provision for such salary at Joliet, holding, too, that the law in force on July 1, 1911, fixing the salary at Joliet did not apply to the Southern Illi-

nois Penitentiary. Counsel for claimant argue, that since the law was amended in 1897, by which the salary of the warden at Joliet was increased from $2,500.00 to $4,000.00 per year, and the fact, that the warden of the Southern Illinois Penitentiary received a like amount, that this is a construction placed by the Commissioners of the Southern Illinois Penitentiary of the legislative intent. From the evidence of claimant, however, it would appear that he received a salary of $3,600.00 per year up to a time about two years prior to the date of his testimony in 1914.

Under the circumstances, we are not prepared to hold with counsel's contention regarding the construction of legislative intent. It is apparent that the warden was paid such salary as the commissioners saw fit to pay him.

The case then resolves itself into an endeavor to ascertain the proper construction of section 14 of the original Act creating the Southern Illinois Penitentiary, and of the amendatory Act, and to place proper construction on the language used.

The case has been very ably argued by counsel on both sides, and very exhaustive references have been made to the cases bearing on the subject. Unless we can clearly ascertain, that it was the legislative intent at the time the Act of 1877 was passed, that all future laws, as well as those then in existence having application to the Illinois State Penitentiary should have like application to the Southern Illinois Penitentiary, of course, there can be no recovery.

The rules with relation to the construction of a statute of this sort, are well discussed in *Culver* v. *People,* 161 Ill., at page 96, where it is said:

"The general rule is, that an Act, which adopts by reference the whole or a portion of another statute, means the law as existing at the time of the adoption, and does not include subsequent additions or modifications of the statute so adopted, unless it does so by express or strongly implied intent."

The Court then discusses exceptions to the rule and while it states, that one of the exceptions is where "the adopting statute makes no reference to any particular Act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting Act, but also the law in force when action is taken or proceedings are resorted to." In the case at bar, however, it would appear that while the statute under discussion does not refer to the laws governing the penitentiary at Joliet by title, yet it does refer to them as "laws now in force." Had this statute read "all laws and regulations for the government and management of the penitentiary at Joliet," we have no hesitation in saying that claimant would have been entitled to recover in this case. But, it is a rule of statutory construction, that effect must be given to all words if possible. The words "now in force" were certainly inserted for a purpose, and must have some well defined meaning, which it is our duty to ascertain.

The legislature has defined what these particular words mean by its Act of March 5, 1874, in force July 1, 1874, being chapter 131, clause 18, paragraph 1, Revised Statutes, by the following enactment:

"The term 'laws now in force' and words of similar import shall mean the laws in force at the time the Act containing the words shall take effect."

It will be observed that this Act of the legislature was law at the time the Act of 1877 creating the penitentiary at Chester became a law.

Further discussion of the cases bearing on statutory construction would undoubtedly be most interesting and to a degree illuminating, but this section of the statute last above quoted must be decisive of the point under discussion. Study of the cases cited leads us to the same conclusion as we arrive at by reading of the statute cited, and it is the opinion of this Court, that claimant is not entitled to recover in manner as he claims in his declaration.

The pleadings in the case before us are a declaration and demurrer; evidence has been taken by stipulation. In the present state of the pleadings and for the reasons above assigned, it is the judgment of this Court that the demurrer of the State be sustained.